# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　Case No. 19-CR-105

KEVIN JOHNSON,

　　　　　　Defendant.

## REPORT AND RECOMMENDATION

**1. Introduction and Background**

On June 4, 2019, the grand jury returned a three count indictment, charging Defendant Kevin Johnson with possessing with intent to distribute cocaine base in the form of "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); possessing a firearm that had been transported in interstate commerce when he previously had been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 1.)

On April 27, 2020, Johnson filed a Motion to Suppress Evidence or, in the alternative, requested that the court hold an evidentiary hearing. (ECF No. 39.) However,

as noted by the government (ECF No. 40), Johnson failed to comply with Criminal L.R. 12(c) by not "provid[ing] a description of the material disputed facts that [he] claims require an evidentiary hearing." Accordingly, the court will decline to hold an evidentiary hearing. For the reasons that follow, the court will recommend denying Johnson's motion to suppress.

2. Facts

The following facts are taken from the parties' briefs and accompanying exhibits. On February 5, 2019, at 11:43 A.M., a caller reported an armed robbery that had just occurred at the intersection of S. 10th Street and W. Orchard Street in Milwaukee. (ECF No. 44 at 9.) The caller identified himself as Robert Terry and sounded distressed. (ECF No. 39 at 2.) He stated that he had been robbed by two black men in their twenties, describing one of them as wearing a red jacket and having a gun. (*Id.*) According to the Computer Automated Dispatch (CAD) Report, the assignment was designated "priority 1," which means that someone is either in great danger or imminently in great danger. (ECF No. 44 at 9.)

Officers Miguel A. Cornejo and Ronald Campos and Officers Matthew Diener and Michael Walker responded to the complaint at 11:47 A.M. (four minutes after the call). (ECF No. 39 at 20.) At 11:49 A.M. Officers Cornejo and Campos observed Johnson, a young black man wearing a red jacket and walking with one hand in his jacket pocket. (*Id.* at 20, 23.) Because he had his hand in his pocket, the officers suspected he may have

2

a gun. (*Id.*) Officer Campos ordered him to stop and show his hands, but Johnson kept walking. (*Id.*; ECF No. 44 at 7.) According to Johnson, after being again asked to stop he complied and asked if the officers were speaking to him. (ECF No. 44 at 7.) When they said yes, he asked why they are always harassing him. (*Id.*) Johnson states that he spoke with the officers but then walked away. (*Id.*) He alleges that when an officer tried to grab him he began running away. (*Id.*) He also dropped a plastic bag. (ECF No. 39 at 20.) The officers chased after Johnson and saw him fall into snow at 1569 S. 10th Street but get up and run into an alley. (*Id.* at 20, 23.) Officers Anna Ojdana and David Cabral had also responded to the area "as a saturating squad." (*Id.* at 34-35.) They caught up to Johnson and found him sitting down with his hands up and jacket off. (*Id.* at 2.) At 11:52 A.M. (less than ten minutes after the initial phone call) Johnson was taken into custody by Officers Cabral and Ojdana. (ECF No. 44 at 10; ECF No. 39 at 2.) Johnson was placed in handcuffs, at which point he told officers that he was not armed. (ECF No. 39 at 2.) He allegedly asked the officers, "Why are you always harassing me?" (*Id.*)

The officers conducted a search incident to arrest and found on Johnson's person 2.81 grams of heroin, 10.64 grams of cocaine, 4.92 grams of marijuana, and $394. (ECF No. 39 at 35.) A smart phone found in the left front pocket of Jackson's jacket was also seized. (*Id.* at 21.) The officers went back to the snow pile where Johnson had slipped and recovered a handgun and another phone. (*Id.*) They also retrieved the bag that Johnson

dropped when he first took off running, in which was a box of sandwich bags and a digital scale with cocaine residue. (*Id.*; ECF No. 41 at 3.)

The person who reported the armed robbery disconnected with the dispatcher after three minutes and could not be reached again. (ECF No. 44 at 9-10.) The dispatcher reported trying to contact him eleven times and said that the phone number was listed to another individual. (*Id.* at 10.)

Johnson moves to suppress the red jacket, the smart phone found in the yard (MPD inventory # 19004187 item #1) (ECF No. 39 at 30) and any evidence found therein, the heroin, cocaine, cannabis, and the cash found on his person. (*Id.* at 1.)

3. **Analysis**

Johnson argues that (1) Officers Cornejo and Campos lacked reasonable suspicion for an attempted *Terry* stop, and (2) Officers Cabral and Ojdana lacked probable cause to arrest him. (ECF No. 39 at 4-13.) Therefore, he argues that "the search incident to arrest was unreasonable and the evidence found therefrom is thereby inadmissible." (*Id.* at 14.)

3.1. **The Attempted *Terry* Stop**

Johnson first argues that the officers did not have reasonable suspicion that he had committed or was about to commit a crime to justify the attempted *Terry* stop. (ECF No. 39 at 4-7.) He argues that, when "Officers Cornejo and Campos ordered [him] to stop, they were relying solely on the profile provided to them by the 911 dispatcher" and that it was not enough for them to just rely on a description. (*Id.* at 5.) He also argues that the

4

description of a black man wearing a red jacket was not adequate because Officer Diener found a different black man in a red jacket. (*Id.*) And he argues that he showed no evasive behavior when he was asked to stop, as "[a] Milwaukeean (albeit, a young black male) with their [sic] hand in their [sic] pockets in early February is not 'suspicious' and does not warrant a seizure." (*Id.* at 6.)

The government asserts that the officers had reasonable suspicion to stop Johnson because he was in the approximate location of the attempted robbery; was the same sex, race, and age as alleged by the caller; and "seemed to be concealing a firearm in his jacket pocket, and thus might have attempted an armed robbery recently." (*Id.* at 5-6.) The government further argues that "Johnson's scornful response and flight gave police even more reasonable suspicion." (*Id.* at 7.) The government concedes that "[i]t is not illegal to be a black man in your 20's wearing a red jacket and being on the public street in a particular area of town at mid-day with one or both hand in your jacket pockets," but argues that the complaint was sufficiently corroborated and reliable. (*Id.* at 6.)

A brief investigatory stop, commonly referred to as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1 (1968), is reasonable under the Fourth Amendment if it is "based on reasonable suspicion that the detained individual has committed or is about to commit a crime." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (quoting *United States v. Uribe*, 709 F.3d 646, 649-50 (7th Cir. 2013)). "The officers initiating the investigatory stop must be able to point to 'specific and articulable facts which, taken together with rational

inferences from those facts,' suggest criminal activity." *Id.* (quoting *Terry*, 392 U.S. at 21). "The reasonable suspicion standard is a lower bar than the probable cause standard necessary for an arrest … but the police are not entitled to detain a person for questioning based on only a hunch." *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018) (internal citation omitted) (citing *Terry*, 392 U.S. at 22; *United States v. Wimbush*, 337 F.3d 947, 949-50 (7th Cir. 2003)).

"When determining whether reasonable suspicion exists, we examine the totality of the circumstances known to the police at the time of the stop, including the experience of the officers and the behavior and characteristics of the suspect." *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) (citing *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996)). "Specifically, police observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch." *Id.* And "[t]he Supreme Court has cautioned against creating any 'rigid demand' based on 'relevant considerations in the totality-of-the-circumstances analysis,' noting that 'a deficiency in one ["veracity" or "reliability" and the informant's "basis of knowledge"] may be compensated for … by a strong showing as to the other.'" *Lopez*, 907 F.3d at 479 (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 233 (1983)).

"When a single informant provides the tip that brought police to a *Terry* stop, this court looks to the amount of information given, the degree of reliability, and the extent

that the officers can corroborate some of the informant's information." *United States v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007) (citing *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003)). And as noted by the Supreme Court,

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Florida v. J.L.*, 529 U.S. 266, 272 (2000).

The armed robbery report came in at 11:43 A.M. and the first police officers responding to the report encountered Johnson within at most six minutes. (ECF No. 44 at 9-10; ECF No. 39 at 23.) Johnson points out that he was not going in the direction that was reported to police. (ECF No. 44 at 3 ("The victim claims … that they fled *eastbound* down the alley 'between Orchard and Lapham.' Mr. Johnson was walking, not running, *southbound* on 9th St. until turning into the alley *westbound*, not east.") (internal citations omitted; emphasis in original).) Even if true, Johnson was found in the same geographic area, close in time to the reported armed robbery call. He easily could have changed directions in the time between the call and when he was first spotted by the officers.

And the caller was not anonymous, as Johnson suggests. The caller gave a name to the dispatcher and officers were able to corroborate his tip by finding an individual in the area who matched the description by race, sex, clothing, age, and suspicion of

carrying a firearm. Although it is possible that Johnson had his hand in his pocket because it was February in Milwaukee and not because he was concealing a gun, reasonable suspicion does not require negating innocent explanations for the suspicious conduct. *See Wardlow*, 528 U.S. at 125 ("All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity.") (citing *Terry*, 392 U.S. at 30.). And even though the police were not able to find the caller again, the tip was sufficiently corroborated to give the officers reasonable suspicion to attempt a *Terry* stop.

**3.2. Probable Cause to Arrest**

Johnson next argues that the officers lacked probable cause to arrest him. Thus, his search incident to arrest was improper. (ECF No. 39 at 7-13.) He argues that, instead of conducting a *Terry* stop, Officers Cabral and Ojdana arrested him "upon contact" and did not ask him any investigative questions until after he had been handcuffed, driven back to the police station, and was being booked. (*Id.* at 8.) And at the time the officers finally caught him, Johnson was "resigned, unarmed, and sitting down with his jacket off and his hands up." (*Id.* at 9.) He argues that his flight was not sufficient to establish either reasonable suspicion or probable cause (*id.* at 10-11) and that the totality of the circumstances does not establish probable cause either (*id.* at 11-13).

In response, the government argues that Johnson knowingly resisted or obstructed the first set of officers when he ran from them. (ECF No. 41 at 9-10.) As a result, the other

officers properly arrested him for that offense. (*Id.* at 10.) And because he was lawfully arrested, the search incident to arrest was also proper. (*Id.* at 10-12.)

In reply Johnson argues that the officers never even conducted a *Terry* stop, so there was nothing for him to obstruct. (ECF No. 44 at 4.)

Officers do not always need a warrant to effectuate a valid arrest:

> A warrantless arrest is constitutionally permissible if supported by probable cause; probable cause for an arrest exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime."

*United States v. Sands*, 815 F.3d 1057, 1061-62 (7th Cir. 2015). And the officer conducting the arrest need not personally possess all of the facts giving rise to probable cause:

> The collective knowledge doctrine allows officers within an agency or officers from different agencies working together to effectuate constitutionally permissible searches and seizures. In other words, the doctrine "permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citation omitted). Three elements must be met for the collective knowledge doctrine to apply: "(1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Id.* at 252-53 (citation omitted).

*Id.* at 1062.

It appears from the police reports that three different officer squads responded to the call: Officers Cornejo and Campos, Officers Cabral and Ojdana, and Officers Walker

and Diener. (ECF No. 39 at 23, 34.) The first squad initially encountered Johnson and attempted a *Terry* stop but he fled. Officers Walker and Diener were in the area, and Officers Cabral and Ojdana ultimately arrested Johnson. Even though they were not the initial officers to encounter Johnson, when they did, Officers Cabral and Ojdana had probable cause to arrest him for obstruction.

To violate Wisconsin's statute on obstruction, Wis. Stat. § 946.41, "[t]he accused must believe or know he (1) resisted the officer, while the officer was (2) acting in an official capacity, *and* (3) with lawful authority." *State v. Lossman*, 118 Wis. 2d 526, 536, 348 N.W.2d 159, 164 (1984) (emphasis in original). When Officers Cornejo and Campos initially approached Johnson, they were acting in their official capacity. Asking him to stop and show his hands was lawful because they reasonably suspected him of committing a crime and possessing a firearm. And by fleeing after being ordered to stop and show his hands, Johnson obstructed Officers Campos and Cornejo from further investigating and questioning him. *See State v. Hamilton*, 120 Wis. 2d 532, 537, 543, 356 N.W.2d 169, 172, 175 (1984) (accepting a definition of the word "obstructs" as "'to hinder, delay, impede, frustrate or prevent' an officer from performing his duties"). Thus, under the collective knowledge doctrine, when Officers Cabral and Ojdana encountered Johnson after he fled, they had probable cause to arrest him for obstruction. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Johnson argues that Officers Cabral and Ojdana arrested him "upon contact" and without first completing a *Terry* stop. However, a *Terry* stop was no longer necessary because the officers had probable cause that Johnson had committed obstruction. It does not matter that the original officers attempted a *Terry* stop. Now that Johnson fled and interfered with their investigation, any subsequent officer to encounter him had probable cause to arrest him under the collective knowledge doctrine.

After conducting a lawful arrest of an individual, police officers are permitted to conduct a search incident to arrest of the individual's person and items on their person, such as a wallet. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *United States v. Rodriguez*, 995 F.2d 776, 778 (7th Cir. 1993) (citing *United States v. Molinaro*, 877 F.2d 1341, 1346-47 (7th Cir. 1989)). Because Johnson's arrest was valid, Officers Cabral and Ojdana were permitted to conduct a search incident to arrest.

Accordingly, there is no basis to suppress the seized evidence, so the court recommends that the motion to suppress be denied.

**IT IS THEREFORE RECOMMENDED** that Johnson's motion to suppress (ECF No. 39) be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final

Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 19th day of June, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge