UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                       Case No. 19-cr-105-pp

KEVIN JOHNSON,

        Defendant.

---

**ORDER OVERRULING DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION (DKT. NO. 46), ADOPTING JUDGE DUFFIN'S REPORT AND REOMMENDATION (DKT. NO. 45) AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE–UNLAWFUL SEARCH AND SEIZURE (DKT. NO. 39)**

---

On June 4, 2019, a grand jury returned a three-count indictment charging defendant Kevin Johnson with (1) possessing crack cocaine, heroin and marijuana with intent to deliver; (2) possessing a firearm after having been convicted of a felony; and (3) possessing a firearm in furtherance of a drug trafficking offense. Dkt. No. 1. The defendant filed a motion to suppress all the evidence acquired from the search incident to arrest, asserting that officers had neither reasonable suspicion to stop him nor probable cause to arrest him. Dkt. No. 39 at 1. Magistrate Judge William E. Duffin concluded that the officers relied on a sufficiently corroborated tip to initiate a Terry stop and that the defendant's obstruction supported an arrest and incidental search. Dkt. No. 45 at 8, 11. He issued a report recommending that this court deny the motion to suppress. Id. at 11. The defendant timely objected. Dkt. No. 46. The

1

court overrules the defendant's objections and adopts Judge Duffin's recommendation.

I. **Standard**

Rule 59(b) governs a district court's referral of motions to suppress to magistrate judges. Fed. R. Crim. P. 59(b). Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress. Fed. R. Crim P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

II. **Background**

A. Factual Background

Judge Duffin drew the facts in his report and recommendation from the parties' briefs and accompanying exhibits. Dkt. No. 45 at 2. As he recounted:

> On February 5, 2019, at 11:43 A.M., a caller reported an armed robbery that had just occurred at the intersection of S. 10th Street and W. Orchard Street in Milwaukee. (ECF No. 44 at 9.) The caller identified himself as Robert Terry and sounded distressed. (ECF No. 39 at 2.) He stated that he had been robbed by two black men in their twenties, describing one of them as wearing a red jacket and having a gun. (*Id.*) According to the Computer Automated Dispatch (CAD) Report, the assignment was designated "priority 1," which means that someone is either in great danger or imminently in great danger. (ECF No. 44 at 9.)
>
> Officers Miguel A. Cornejo and Ronald Campos and Officers Matthew Diener and Michael Walker responded to the complaint at 11:47 A.M. (four minutes after the call). (ECF No. 39 at 20.) At 11:49

A.M. Officers Cornejo and Campos observed Johnson, a young black man wearing a red jacket and walking with one hand in his jacket pocket. (*Id.* at 20, 23.) Because he had his hand in his pocket, the officers suspected he may have a gun. (*Id.*) Officer Campos ordered him to stop and show his hands, but Johnson kept walking. (*Id.*; ECF No. 44 at 7.) According to Johnson, after being again asked to stop he complied and asked if the officers were speaking to him. (ECF No. 44 at 7.) When they said yes, he asked why they are always harassing him. (*Id.*) Johnson states that he spoke with the officers but then walked away. (*Id.*) He alleges that when an officer tried to grab him he began running away. (*Id.*) He also dropped a plastic bag. (ECF No. 39 at 20.) The officers chased after Johnson and saw him fall into snow at 1569 S. 10th Street but get up and run into an alley. (*Id.* at 20, 23.) Officers Anna Ojdana and David Cabral had also responded to the area "as a saturating squad." (*Id.* at 34-35.) They caught up to Johnson and found him sitting down with his hands up and jacket off. (*Id.* at 2.) At 11:52 A.M. (less than ten minutes after the initial phone call) Johnson was taken into custody by Officers Cabral and Ojdana. (ECF No. 44 at 10; ECF No. 39 at 2.) Johnson was placed in handcuffs, at which point he told officers that he was not armed. (ECF No. 39 at 2.) He allegedly asked the officers, "Why are you always harassing me?" (*Id.*)

The officers conducted a search incident to arrest and found on Johnson's person 2.81 grams of heroin, 10.64 grams of cocaine, 4.92 grams of marijuana, and $394. (ECF No. 39 at 35.) A smart phone found in the left front pocket of Jackson's jacket was also seized. (*Id.* at 21.) The officers went back to the snow pile where Johnson had slipped and recovered a handgun and another phone. (*Id.*) They also retrieved the bag that Johnson dropped when he first took off running, in which was a box of sandwich bags and a digital scale with cocaine residue. (*Id.*; ECF No. 41 at 3.) The person who reported the armed robbery disconnected with the dispatcher after three minutes and could not be reached again. (ECF No. 44 at 9-10.) The dispatcher reported trying to contact him eleven times and said that the phone number was listed to another individual. (*Id.* at 10.)

Id. at 2-4.

 B. <u>Parties' Arguments</u>

In the motion to suppress, the defendant argued that officers lacked reasonable suspicion for "the attempted <u>Terry</u> stop." Dkt. No. 39 at 3. He stated

that as justification for the stop, Officers Cornejo and Campos relied solely on a profile provided through a 911 call to a police dispatcher. Id. at 5. Reasoning that that profile initially led officers to another man in similar clothing, the defendant argued that the profile was "clearly deficient." Id. (citing Matthew Diener Body Camera X83035732, February 5, 2019, at 00:36) (emphasis omitted). The defendant emphasized that the "distressed and confused" caller could not be reached by officers when they later attempted to follow up because the caller provided a phone number listed to someone else. Id. at 5-6. The defendant admitted that he "disobeyed [] officers" and fled; he contended that his flight was irrelevant because the court's reasonableness analysis is "necessarily limited to the time at which the seizure occurs," and that at that time, he showed no "suspicious behavior" sufficient to support a seizure. Id. at 6 (citing United States v. Odum, 72 F.3d 1279, 1284 (7th Cir. 1995)). The defendant alleged that because "the conduct of Officers Cabral and Ojdana did not rise to the level of a custodial arrest" and because "there was no objectively reasonable belief of danger at the time of the search," the incidental search was unlawful. Id. at 7.

The defendant asserted that the officers ultimately arrested him with neither a warrant nor probable cause. Dkt. No. 39 at 7. After arguing extensively that his arrest was a custodial arrest as opposed to a Terry stop, id. at 7-10, the defendant asserted that flight alone was insufficient to show either reasonable suspicion or probable cause. Id. at 10-11 (citing United States v. Quinn, 83 F.3d 917 (7th Cir. 1996); Illinois v. Wardlow, 528 U.S. 119 (2000);

4

United States v. Baskin, 401 F.3d 788, 792 (2005); United States v. Cherry, 920 F.3d 1126, 1136 n.3 (7th Cir. 2019)). He contended that his flight did not give officers probable cause to arrest him under Wis. Stat. §946.41, asserting that because the officers lacked reasonable suspicion to conduct the initial Terry stop, they were not "acting within lawful authority" as required by the statute. Id. at 11. The defendant maintained that his "comments about how the officers were frequently harassing him" showed that "he did not know the officers were acting with lawful capacity." Id.

The defendant also argued that probable cause did not exist under the totality of the circumstances. Id. He stressed that he did not resist or commit a battery on a police officer, and argued that "Officers Cornejo and Campos could not reasonably suspect [him] of a crime for abandoning a plastic bag." Id. at 12. Conceding that "hot pursuit of a fleeing felon, public safety, and the destruction of evidence may each give rise to exigent circumstances," id. at 12-13 (citing Mason v. Godinez, 47 F.3d 852, 856 (7th Cir. 1995); United States v. Hardy, 52 F.3d 147, 149 (7th Cir. 1995); United States v. Rivera, 825 F.2d 152, 156 (7th Cir. 1987)), the defendant stated that "the belief that exigent circumstances exist must be objectively reasonable." Id. at 13. He asserted that "[h]ere, the officers had no valid reason to believe that [he] posed a threat to public safety or that he would destroy evidence." Id. "Finally," he concluded, "officers could not have relied on the gun that they found in the front yard" because "[t]he gun was not part of the original arrest equation." Id.

5

The government responded that because the defendant "ran from police when they asked him to stop, there was no seizure, and the police did not need reasonable suspicion to attempt to stop [the defendant]." Dkt. No. 41 at 5. It asserted that even if police did need reasonable suspicion, they had it. Id. The government argued that the defendant "fit the description of the suspect" by sex, race, age and approximate location, and "seemed to be concealing a firearm in his jacket pocket"—all of which corroborated the 911 call. Id. at 6. It argued that under the totality of the circumstances, this corroboration "gave the complaint sufficient indicia of reliability to do an investigatory stop of [the defendant]." Id. (citing United States v. Smith, 697 F.3d 625, 632-33 (7th Cir. 2012); United States v. Lawshea, 461 F.3d 857, 859 (7th Cir. 2006); United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003)). The government maintained that although the lack of a seizure made it unnecessary, police had specific and articulable facts to justify engaging the defendant. Id. at 7. In addition to the profile, the government cited the defendant's "scornful response and flight." Id. (citing United States v. Mays, 819 F.3d 951, 957 (7th Cir. 2016)).

The government asserted that the police did not consider the defendant's flight alone, but rather, "were investigating a complaint about an attempted armed robbery in the vicinity involving a firearm, and [the defendant] matched the description of a person of interest." Dkt. No. 41 at 8. The government argued that "[f]urther observation that one of [his] hands was inside one of his jacket pockets raised concerns that he could be concealing a firearm there." Id.

6

at 8-9. "These observations," according to the government, constituted "specific, articulable grounds—not suspicion, or a hunch—to further investigate . . . and order[] [the defendant] to stop." Id. at 9. According to the government, officers also properly arrested the defendant for violating Wisconsin and Milwaukee's parallel obstruction laws, reasoning that (1) officers acted within their official capacities when they investigated the armed robbery, (2) during that investigation, officers "clearly told [the defendant] to stop," and (3) the defendant's subsequent flight from police "was a knowing resistance or obstruction" of that investigation. Id. at 9-10. (citing Wis. Stat. §946.41; Milwaukee Code of Ordinances §105-138).

Stating that the "[p]olice had cause for concern that [the defendant] could be armed," the government concluded that "[t]he post-arrest search of [the defendant] was valid and reasonable." Id. at 11 (citing United States v. McPhaul, 835 F.3d 687, 690 (7th Cir. 2016)). "[The defendant's] flight only increased [] concern." Id.

In his reply brief, the defendant argued that the government based its position "almost exclusively" on the fact that the defendant has his hands in his jacket on a cold day in February in Wisconsin. Dkt. No. 44 at 2. He argued that the tip was unverified. Id. at 2-3. He asserted that the information the police had "did not comport with reality," because the victim claimed to have been robbed by two Black males (not one) and that the robbers fled eastbound when the defendant was walking southbound, then west. Id. at 3. The defendant also maintained that he could not have obstructed the officers

7

because the stop was not a Terry stop; he stated that "[i]f law enforcement did not intend to temporarily detain [him] to investigate potential criminal activity, then there was nothing for [him] to obstruct." Id. at 4.

C.  Judge Duffin's Recommendation

Judge Duffin concluded that "even though the police were not able to find the caller again, the tip was sufficiently corroborated to give the officers reasonable suspicion to attempt a Terry stop." Dkt. No. 45 at 8. Noting the defendant's argument that "he was not going in the direction that was reported to police," Judge Duffin determined that the defendant "was found in the same geographic area, close in time to the reported armed robbery call," and "easily could have changed directions in the time between the call and when he was first spotted by the officers." Id. Judge Duffin noted that "the caller was not anonymous, as [the defendant] suggests;" he explained that "[t]he caller gave a name to the dispatcher and officers were able to corroborate his tip by finding an individual in the area who matched the description by race, sex, clothing, age, and suspicion of carrying a firearm." Id. at 7-8. Agreeing that it was "possible that [the defendant] had his hand in his pocket because it was February in Milwaukee and not because he was concealing a gun," Judge Duffin found that "reasonable suspicion does not require negating innocent explanations for the suspicious conduct." Id. at 8 (citing Wardlow, 528 U.S. at 125).

Next, Judge Duffin found that "Officers Cabral and Ojdana had probable cause to arrest [the defendant] for obstruction." Id. at 10. He concluded that (1)

8

"[w]hen Officers Cornejo and Campos initially approached [the defendant], they were acting in their official capacity, (2) "[a]sking [the defendant] to stop and show his hands was lawful because they reasonably suspected him of committing a crime and possessing a firearm, (3) "by fleeing after being ordered to stop and show his hands, [the defendant] obstructed Officers Campos and Cornejo from further investigating and questioning him" under Wis. Stat. §946.41, and (4) "under the collective knowledge doctrine, when Officers Cabral and Ojdana encountered [the defendant] after he fled, they had probable cause to arrest him for obstruction." Id. at 10-11 (citing Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009)).

Regarding the defendant's argument that "Officers Cabral and Ojdana arrested him 'upon contact' and without first completing a Terry stop," Judge Duffin concluded that "a Terry stop was no longer necessary because the officers had probable cause that [the defendant] had committed obstruction;" Judge Duffin found that "it [did] not matter that the original officers attempted a Terry stop." Id. at 11. Last, Judge Duffin ruled that "[b]ecause [the defendant's] arrest was valid, Officers Cabral and Ojdana were permitted to conduct a search incident to arrest." Id. at 11. (citing United States v. Robinson, 414 U.S. 218, 235 (1973); United States v. Rodriguez, 995 F.2d 776, 778 (7th Cir. 1993)).

Finding "no basis to suppress the seized evidence," Judge Duffin recommended that this court deny the defendant's motion. Id. Judge Duffin

9

also declined the defendant's alternative request for an evidentiary hearing. Id. at 1.

### E. Objections

The defendant timely objected, disputing only Judge Duffin's conclusion that reasonable suspicion supported the attempted Terry stop. Dkt. No. 46 at 1. He objects on four grounds.

First, he contests Judge Duffin's conclusion that the caller was not anonymous, noting that (1) "[a]lthough the caller gave a name, [he] could not be contacted after eleven attempts," id. at 2; (2) the caller's reputation could not be adequately assessed, id.; (3) "[p]roviding an unverifiable name and being unknown to the police has the effect of anonymity," id., and (4) the caller "[could not] be held responsible if the allegation turn[ed] out to be fabricated." Id. (citing dkt. no. 45 at 7).

Second, he objects to Judge Duffin's determination that "the tip was corroborated simply by 'finding an individual in the area who matched the description by race, sex, clothing, age, and suspicion of carrying a firearm.'" Id. (quoting dkt. no. 45 at 7-8). The defendant stresses that "while profiles may be considered, the officers are required to articulate specific characteristics and actions exhibited by the person to be detained which arouse the officer's attention," and that in this case, they failed to do so. Id. at 3 (citing United States v. Dennis, 115 F.3d 524, 532 (7th Cir. 1997)). He suggests that "officers were forced to claim that because [the defendant] had his hands in his pocket, he must be concealing a gun." Id. at 3.

10

Third, he disagrees with Judge Duffin's "position that this single tipster gave enough information" for the officers to reliably conclude that the defendant matched the "tipster's" description. Id. "A tip is not reliable," he contends, "merely because its description of the suspect's visible attributes proves accurate; reasonable suspicion requires that a tip must be reliable in its assertion of illegality." Id. He adds that "having a mere suspicion that [the defendant] was carrying a firearm was not adequate grounds for reasonable suspicion." Id. (citing Dennis, 115 F.3d at 532).

Finally, the defendant challenges Judge Duffin's conclusion that "reasonable suspicion does not require negating innocent explanations for the suspicious conduct," arguing that Judge Duffin "failed to explain exactly what 'suspicious conduct' [the defendant] was engaging in." Id. at 4 (quoting dkt. no. 45 at 8). He suggests that, as opposed to an armed robbery suspect who evades responding police, or three individuals dropping a "baggie with white residue" and scattering when an officer approaches, walking down the street is not suspicious behavior. Id. at 4.

The government responded that "obvious and highly articulable facts gave police the requisite reasonable suspicion needed to stop [the defendant]." Dkt. No. 47 at 3-4 (citing Quinn, 83 F.3d at 921). It disputes the defendant's argument that the complainant was "too anonymous," arguing that although "police could not contact the complainant after he left the call after [three] minutes," the caller still left a name. Id. at 4. Responding to the defendant's argument "that having his hands in his pockets in February was insufficient

11

corroboration of illegality," the government urges that "reasonable suspicion does not require negating innocent explanations for the suspicious conduct," and asserts that under the totality of the circumstances, it was suspicious for the defendant to have his hands in his pockets. Id. at 4-5 (citing Wardlow, 538 U.S. at 125).

### III. Analysis

The Fourth Amendment permits "[a] limited intrusion into an individual's privacy . . . where the police have reasonable suspicion to believe criminal activity is afoot." United States v. Richmond, 924 F.3d 404, 411 (7th Cir. 2019) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968); Baskin, 401 F.3d at 791). Reasonable suspicion requires more than a hunch but less than probable cause and "considerably less than preponderance of the evidence." Richmond, 924 F.3d at 411 (quoting Wardlow, 528 U.S. at 123). An officer has reasonable suspicion when the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion." Baskin, 401 F.3d at 791 (quoting Terry, 302 U.S. at 21); see also Richmond, 924 F.3d at 411.

A court making a reasonable suspicion determination "must look at the totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Richmond, 924 F.3d at 411 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Examining the totality of the circumstances means that the court "must not be overly focused on any one factor." Id. (quoting United States v. Swift, 220 F.3d

12

502, 506 (7th Cir. 2000)). "[B]ehavior which is susceptible to an innocent explanation when isolated from its context may still give rise to reasonable suspicion when considered in light of all the factors at play." Id. at 412 (quoting Baskin, 401 F.3d at 793). Reasonable suspicion depends on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Navarette v. California, 572 U.S. 393, 402 (2014) (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)).

A.   Anonymity

The defendant first asserts that contrary to Judge Duffin's report, the 911 caller was anonymous. An officer should not rely on a "bare report of an unknown, unaccountable informant who neither explained how he knew about [the reported criminal activity] nor supplied any basis for believing he had inside information." Florida v. J.L., 529 U.S. 266, 271 (2002). "[T]here are situations," however, "in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Id. at 270. For an anonymous tip to support reasonable suspicion, it must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id. at 272. For an anonymous caller to "necessarily claim[] eyewitness knowledge" of an alleged crime, for example, "lends significant support to the tip's reliability." Navarette, 572 U.S. at 399 (citing Illinois v. Gates, 462 U.S. 213, 234 (1983)). An indication that a tip "was contemporaneous with the observation of criminal activity or made under the stress of excitement caused by a startling event . . . weigh[s] in favor of the

13

caller's veracity." Id. at 400. A "caller's use of the 911 emergency system," which records a variety of information about the caller, has the same effect. Id.

As Judge Duffin noted, the caller was not anonymous. He gave a name—Robert Terry. The fact that the 911 dispatcher could not confirm that identity does not change that fact. In arguing that the police could not verify Mr. Terry's credibility, the defendant ignores the facts that he sounded distressed to the 911 dispatcher and that he was not reporting events unrelated to him—he was reporting that he had just been a victim of a crime. The caller was not an anonymous tipster, "ratting out" an identified individual. He simply said that he'd just been robbed by two men and he described them. He "necessarily claimed eyewitness knowledge" of an alleged crime contemporaneous to that alleged crime through the use of the 911 emergency system. Navarette, 572 U.S. at 399-400. Under Navarette, even if the call had been anonymous, that fact alone would not preclude a finding of reasonable suspicion.

B.  Corroboration and Specific and Articulable Facts

The defendant argues that it was insufficient for the officers to corroborate the tip "simply by 'finding an individual in the area who matched the description by race, sex, clothing, age, and suspicion of carrying a firearm'" because "while profiles may be considered, the officers are still required to articulate specific characteristics and actions exhibited by the person to be detained which arouse the officer's attention." Dkt. No. 45 at 3 (citing Dkt. No. 45 at 7-8; Dennis, 115 F.3d at 532). He contends that "[n]o articulable facts existed to engage in a Terry stop with [the defendant]." Id. This simply is not

14

the case. The 911 call provided police with specific and articulable facts for the Terry stop.

If the defendant means to argue that the officers should have investigated the caller's allegations without stopping the defendant, that argument lacks merit. "A 911 system designed to provide an emergency response to telephonic tips could not operate if the police had to verify the identity of all callers and test their claim to have seen crimes in progress." United States v. Wooden, 551 F.3d 647, 650 (7th Cir. 2008). "[A] need for dispatch can make reasonable a stop that would not be reasonable if the police had time to investigate at leisure." Id. When analyzing the reasonableness of the stop, the reviewing court considers whether the caller provided a basis for knowing about the crime. Id. The dangerousness of the alleged crime is also a factor in this reasonableness analysis. United States v. Burgess, 759 F.3d 708, 710 (7th Cir. 2014) (citing United States v. Goodwin, 449 F.3d 766, 769 (2006)).

Here, the caller stated that he personally had been the victim of an armed robbery involving a firearm. Not only did the caller allege illegal activity, but the alleged activity gave rise to the reasonable inference that the suspects posed an imminent danger. The responding officers could not take the time to investigate at leisure. Under the totality of the circumstances, the information in the 911 call combined with the officers' observations provided specific and articulable facts for the attempted Terry stop.

C. <u>Reliability</u>

As noted, the defendant characterizes the 911 call as a "tip," arguing that it was not sufficiently reliable. Dkt. No. 46 at 3. He states that "[h]aving a mere suspicion that [the defendant] was carrying a firearm was not adequate grounds for reasonable suspicion." <u>Id.</u>

While some tips provide "more general descriptions than [is] ideal," "a lack of better, more detailed descriptions does not mean that officers must disregard the limited information they have." <u>United States v. Street</u>, 917 F.3d 586, 594 (7th Cir. 2019) (citing <u>United States v. Foster</u>, 891 F.3d 93, 104-06 (3d Cir. 2018); <u>United States v. Arthur</u>, 764 F.3d 92, 97–98 (1st Cir. 2014); <u>United States v. Turner</u>, 699 A.2d 1125, 1128-30 (D.C. 1997)). Although "officers are not permitted to stop a person based solely on his race and sex," the Seventh Circuit does not expect officers to "ignore such defining features." <u>Id.</u> (citing <u>United States v. Morrison</u>, 254 F.3d 679, 682 (7th Cir. 2001)). It is reasonable to initiate a <u>Terry</u> stop based on "limited physical descriptions of [] suspects" of a crime when coupled with "timing, location, and reliable information about the suspects' movements." <u>Id.</u> at 595.

Officers Campos and Cornejo responded within four minutes to a report of an armed robbery, and observed the defendant within six minutes. Dkt. No. 45 at 2. The report, describing "two black men in their twenties, [] one of them wearing a red jacket and having a gun," <u>id.</u>, was general, but the lack of more detail did not mean that Officers Campos and Cornejo had to ignore what information they had. The defendant fit the description, and police observed

16

him near the place and time of the reported robbery with his hand in his pocket. Id. at 2-3. It was reasonable for the officers to consider that an armed robbery suspect with his hand in his pocket may have been concealing a firearm. The officers did not attempt the Terry stop based on a mere hunch, but on the information from the 911 call combined with the fact that they found a person matching the general description of one of the alleged robbers in the area where the robbery was alleged to have occurred minutes after it was alleged to have occurred. Under the totality of the circumstances, this information was sufficiently reliable for the purposes of reasonable suspicion.

    D.    <u>Suspicious Conduct</u>

The defendant argues that Judge Duffin "failed to explain exactly what 'suspicious conduct' [the defendant] was engaging in." Dkt. No. 46 at 4. He argues—and Judge Duffin agreed—that cold weather could explain why his hand was in his pocket. But the United States Supreme Court has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" Navarette, 572 U.S. at 403 (citing Arvizu, 534 U.S. at 277).

The court already has concluded that under the totality of the circumstances, the officers had reasonable suspicion to stop the defendant. The fact that the police were not able to contact the complainant after the fact may be ambiguous. "But '[t]he need to resolve ambiguous factual situations—ambiguous because the observed conduct could be either lawful or unlawful—is a core reason the Constitution permits investigative stops.'" Richmond, 924

17

F.3d at 413 (quoting United States v. Miranda-Sotolongo, 827 F.3d 663, 669 (7th Cir. 2016)). "Because the aggregate facts support a particularized and objective basis for the officers to suspect [the defendant] was engaged in criminal activity, their suspicions were reasonable within the meaning of the Fourth Amendment." Id.

Judge Duffin did not commit clear error in concluding that the officers had reasonable suspicion to conduct the Terry stop. The court overrules the defendant's objections and adopts Judge Duffin's recommendation in its entirety.

## IV. Conclusion

The court **OVERRULES** the defendant's objections to Judge Duffin's recommendation. Dkt. No. 46.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 45.

The court **DENIES** the defendant's motion to suppress evidence from the search and seizure. Dkt. No. 39.

Dated in Milwaukee, Wisconsin this 2nd day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**